STOICK v CARO COMMUNITY HOSPITAL

Docket No. 89278. Submitted October 6, 1987, at Lansing. Decided
　　March 9, 1988.

　　Mary K. Stoick and Michael Stoick brought a medical malprac-
　　tice action in Tuscola Circuit Court against Caro Community
　　Hospital, the Village of Caro, Caro Family Physicians, P.C., Fe
　　F. Quines, M.D., and Dante Loo, M.D. Plaintiffs alleged that
　　Mary Stoick, a patient of Caro Family Physicians, P.C., was
　　directed by the physician's group to go to Caro Community
　　Hospital when she began to experience health difficulties; when
　　no doctor from her physician's group was available at the
　　hospital, she was directed to a clinic staffed by Dr. Dante Loo,
　　an employee of the hospital; following an examination, Dr. Loo
　　told her that she was having a stroke and that immediate
　　hospitalization was required, but that only her family physician
　　or a treating physician could admit her; she then went to her
　　physician, Dr. Quines, who told her that she was having a
　　stroke and sent her to the hospital, but did not accompany her;
　　she had to wait approximately one hour until another doctor
　　from the physician's group arrived and admitted her; and as a
　　result of the failure to admit her to the hospital in a more
　　timely fashion, she suffered a disabling and disfiguring injury
　　and other damages. Dr. Loo averred that: Mary Stoick was not
　　in need of emergency care when he saw her; he did not tell her
　　that she was having a stroke; he followed the applicable stan-
　　dard of care; and he did not refuse treatment. Dr. Loo moved
　　for summary disposition on the basis of governmental immu-
　　nity. The trial court, Patrick R. Joslyn, J., granted Dr. Loo's
　　motion, holding that Dr. Loo was a public employee, that he

REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability §§ 85 *et seq.*
Liability of hospital or sanitarium for negligence of physician or
　　surgeon. 51 ALR 4th 235.
Comment note.—Municipal immunity from liability for torts. 60
　　ALR 2d 1198.
State's immunity from tort liability as dependent on governmental
　　or proprietary nature of function. 40 ALR2d 927.
Immunity from liability for damages in tort of state or governmen-
　　tal unit or agency in operating hospital. 25 ALR 2d 203.

was acting during the course of his employment and within the scope of his authority, that he was acting in good faith and that he was performing a discretionary-decisional function. Plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court erred in holding that the plaintiffs' pleadings were not sufficient to state a valid claim and raise a disputed question relative to whether Dr. Loo acted in good faith. Plaintiffs' allegations, if true, would establish deliberate indifference on the part of Dr. Loo and thus would be sufficient to raise a disputed question as to whether Dr. Loo acted in good faith.

2. While Dr. Loo's diagnosis of Mary Stoick's condition was a discretionary decision which would be subject to governmental immunity, if the plaintiffs' claim that Dr. Loo decided that Mary Stoick should be admitted to the hospital is taken as true, as it must be for the purpose of the motion for summary disposition, Dr. Loo's execution of that decision, i.e., his failure to admit or otherwise treat her, is a ministerial act which is not subject to governmental immunity.

3. The allegation that Dr. Loo committed intentional torts does not per se preclude the application of governmental immunity.

Reversed.

1. GOVERNMENTAL IMMUNITY — PLEADING — SUMMARY DISPOSITION.

A plaintiff, when confronted with a claim of governmental immunity, must plead facts in avoidance of governmental immunity; in testing whether a plaintiff has pled sufficient facts to overcome a claim of governmental immunity, all well-pled allegations are presumed to be true; summary disposition should not be granted unless no factual development could possibly furnish a basis for recovery (MCR 2.116[C][7]).

2. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES.

Public employees are immune from tort liability only when they are 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, 2) acting in good faith, and 3) performing discretionary, as opposed to ministerial acts.

3. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES — GOOD FAITH — PLEADING — MEDICAL MALPRACTICE — SUMMARY DISPOSITION.

Allegations that a doctor who was an employee of a public hospital refused to render treatment to a person or admit that person to the hospital where after an examination the doctor

knew or should have known that the person was suffering a stroke are sufficient to allege deliberate indifference by the doctor and thus constitute a denial that the doctor was acting in good faith as is required for a public employee to be able to claim governmental immunity; when confronted with such pleading, it is error for a trial court to grant summary disposition on the basis of governmental immunity.

4. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES — DISCRETIONARY DECISIONS — MINISTERIAL ACTS.

Summary disposition on the basis of governmental immunity is not available to a doctor who is an employee of a public hospital where it is alleged that the doctor, after examining the plaintiff, determined that plaintiff needed to be admitted to the hospital but then failed to admit the person to the hospital or otherwise treat the plaintiff, since, although the determination of whether hospital admission was necessary is a discretionary act, the execution of that decision is a ministerial act.

5. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — GOVERNMENTAL FUNCTION.

Intentional torts are not per se an exception to governmental immunity; if an intentional tort is committed within the scope of a governmental function, the tort is subject to governmental immunity.

*House & Schrope* (by *Clinton C. House*), for plaintiffs.

*McGraw, Borchard & Martin, P.C.* (by *Patrick J. McGraw*), for Dante Loo, M.D.

Before: J. B. SULLIVAN, P.J., and H. HOOD and M. E. CLEMENTS,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order of summary disposition granted on behalf of defendant Dr. Loo on the ground of governmental immunity in plaintiff's medical malpractice action. MCR 2.116(C)(7).

Plaintiffs filed suit against the Village of Caro, Caro Community Hospital, Dr. Loo, Caro Family

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Physicians, and Dr.Quines, for medical malpractice. Only the order granting summary disposition in favor of Dr. Loo is at issue.

In plaintiffs' complaint, plaintiffs alleged the following. On February 28, 1983, plaintiff Mary Katherine Stoick (hereinafter plaintiff) contacted her daughter-in-law, Gloria Stoick, because plaintiff was having difficulties with her health. Gloria Stoick went to plaintiff's house and called defendant Caro Family Physicians, P.C., where plaintiff had a 1:30 P.M. appointment. An employee of Caro Family Physicians gave her permission to take plaintiff to defendant Caro Community Hospital. Once at the hospital, no doctor was available. Eventually, a nurse directed plaintiff to Dr. Loo's clinic in the hospital. Dr. Loo examined plaintiff and found right side facial paralysis, weakness, dizziness,and an inability to talk. Dr. Loo told plaintiff that she was having a stroke, and that immediate hospitalization was required. However, Dr. Loo refused to admit plaintiff to the hospital because of a hospital policy that only the patient's family physician or treating physician could admit a patient. Thus, Dr. Loo told plaintiff to go to her own physician. Plaintiff went to her physician, defendant Dr. Quines, who told her that she was having a stroke and to go to the hospital immediately. Dr. Quines did not accompany plaintiff. She had to wait approximately one hour before another doctor of Caro Family Physicians arrived and admitted her to the intensive care unit.

Gloria Stoick submitted an affidavit in which she stated that Dr. Loo examined plaintiff, told plaintiff that she was having a stroke, told her that she had to go to the hospital immediately, and refused to admit her himself.

Dr. Loo submitted an affidavit in which he stated that plaintiff was not in need of emergency

care when she came to the clinic, and that he did not tell her she was having a stroke. He stated that he properly followed all applicable standards of care, did not refuse treatment to plaintiff, and, after referring plaintiff to her family physician, did attempt to make a phone call to her family physician's office.

The court granted summary disposition on behalf of Dr. Loo on October 28, 1985. In its order, the court stated:

> The second issue concerns Count III of Plaintiff's complaint, the individual liability of Dr. Dante Loo, M.D. The facts plead that on February 28, 1983, the date that all allegations of negligence have been averred, Dr. Dante Loo, M.D., was an employee of Caro Community Hospital. This issue involves a separate analysis proffered in *Ross* [*v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984)].
>
> In determining "the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined," *Ross, supra,* p 635.
>
> The standard of review for assertion of governmental immunity for employees is stated as follows:
>
> "Lower level officers, employees, and agents are immune from tort liability only when they are
>
> "(a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;
>
> "(b) acting in good faith, *and*
>
> "(c) performing discretionary-decisional, as opposed to ministerial-operational, acts." *Ross, supra,* p. 592.
>
> The Michigan Supreme Court further defines discretionary versus ministerial acts:
>
> *"Discretionary-decisional"* acts are those which involve significant decision-making that entails

personal deliberation, decision and judgment. *"Ministerial-operational"* acts involve the execution or implementation of a decision and entail only minor decision-making. *Ross, supra,* p. 592.

It is the opinion of this Court that Plaintiff's complaint has fallen short of a showing that Dr. Loo was engaged in any ultra-vires activity. The alleged facts are not adequate to show that Defendant was acting outside his authority, with ill-faith and performing a ministerial-operational task. His decision not to admit the Plaintiff was clearly a discretional act under the circumstances of this case and immune from liability [sic].

Initially, we note that the court erred in confining its analysis to the pleadings alone and disregarding the affidavits. MCR 2.116(G)(2) states that for motions based on subrule (C)(7), affidavits, depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the motion. MCR 2.116(G)(5) states that the affidavits and other documentary evidence *must* be considered by the court. Thus, the court should have considered the affidavits in determining whether a disputed issue of fact existed. Since there was a material issue of fact raised by the affidavits as to whether Dr. Loo told plaintiff that she was suffering from a stroke and that she needed to be hospitalized immediately and then refused to admit her, the court then should have looked to the legal sufficiency of plaintiff's pleadings to see if the complaint could survive a summary disposition motion as to Dr. Loo.

To overcome a claim of governmental immunity, a complaint must plead facts in avoidance of governmental immunity. *McCann v Michigan,* 398 Mich 65, 77; 247 NW2d 521 (1976); *Ross v Consumers Powers Co (On Rehearing),* 420 Mich 567, 621,

n 34; 363 NW2d 641 (1984); *Hyde v University of Michigan Bd of Regents,* 426 Mich 223, 261; 393 NW2d 847 (1986). In testing whether plaintiffs have pled sufficient facts to overcome a claim of governmental immunity, all well-pled allegations are presumed to be true. *Tobias v Phelps,* 144 Mich App 272, 275-76; 375 NW2d 365, lv den 424 Mich 859 (1985). Summary disposition should not be granted unless no factual development could possibly furnish a basis for recovery. *Tobias, supra* at 276.

In *Ross, supra,* the Court adopted a two-tiered test for evaluating individual immunity from tort liability. Judges, legislators, and the highest executive officials of all levels of government are absolutely immune when they are acting within their judicial, legislative or executive authority. *Ross, supra* at 633. Lower level officials, employees, and agents enjoy governmental immunity only if they are:

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> 2) acting in good faith; and
> 3) performing discretionary, as opposed to ministerial acts. [*Ross, supra* at 633-634.]

Plaintiffs did not argue at the hearing that the first requirement was not met. Therefore, we move to the second requirement. The "good faith" requirement has not received much attention by the courts. In *Tobias, supra,* the plaintiff alleged that several months after the plaintiff's decedent's commitment to the Ypsilanti Forensic Center, the defendant doctors began to wean her off her asthma medication in preparation for surgery, that the decedent began having increasing diffi-

culty with her asthma, and begged defendants for medication, that her condition worsened and one day she was sent to the "quiet room" as punishment for failing to dress, and that she was later found dead in the room. The plaintiff alleged that the doctors breached the applicable standard of care. *Tobias, supra* at 276. The trial court held that the plaintiff had failed to plead sufficient facts in avoidance of governmental immunity to permit prosecution of the medical malpractice claim. This Court reversed and stated the following regarding bad faith:

> We also conclude that plaintiff's allegations, if true, might support a finding that defendants did not act "in good faith". *Ross, supra.* Indeed, if they were deliberately indifferent to the decedent's serious medical needs and, therefore, liable under 42 USC 1983, then they could not have been acting in good faith. In *Estelle v Gamble* [429 US 97, 104; 97 S Ct 285; 50 L Ed 2d 251 (1976)] the United States Supreme Court held "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" forbidden by the Eighth Amendment. Such a state of mind is utterly inconsistent with good faith. [*Tobias, supra* at 282.]

In the instant case, plaintiff alleged the following:

> 18. That the Defendant, Dr. Loo examined Mary Katherine Stoick and indicated that she was "having a stroke".
>
> 19. That Defendant, Dr. Loo at that time took her blood pressure and received a reading of 210/110 with a pulse of 100 and resperation [sic] of 20. Further, Defendant, Dr. Loo's examination indicated a right side facial paralysis, weakness, dizziness and inability to talk. Further, in his examina-

tion Defendant, Dr. Loo indicated that the Plaintiff needed to be admitted to the hospital.

20. That Defendant, Dr. Dante Loo refused at that time to admit the patient to Defendant, Caro Community Hospital.

* * *

51. That the Defendant, Dr. Dante Loo at all times pertinent hereto and relative to all facts stated herein and [sic] held himself out to the public as a general practitioner and/or as [a] specialist in the field of family medicine and in accordance therewith owed the plaintiff Mary Katherine Stoick the duty to provide the recognized standard of care of an acceptable, professional practice in the community in which the defendant practices or in a similar community or as stated in MSA 27A.2912(1)(a) and/or (b). That notwithstanding the standard of care aforementioned of Dr. Dante Loo negligently and/or willfully and/or intentionally and/or recklessly treated the plaintiff Mary Katherine Stoick in a manner beneath said aforementioned standard of care, to wit:

a) improperly failed to maintain a continuity of care either by himself or some other physician after having examined the patient;

b) failed to properly and adequately notify the defendant Caro Family Physicians of an emergency patient;

c) failed to admit the plaintiff when he knew or should have known that she was having a stroke and/or in an emergency situation;

d) abandoning the patient, Mary Katherine Stoick, when he knew or should have known that she was in an emergency situation;

e) failed to properly treat Mary Katherine Stoick having first determined that she was having a stroke and having symptoms of a stroke;

f) failing to properly and adequately treat and care for the plaintiff Mary Katherine Stoick having once undertaken the duty;

g) refusing to admit the plaintiff Mary Kather-

ine Stoick when she was showing symptoms of being in an emergency situation;

h) improperly treating the plaintiff Mary Katherine Stoick;

i) improperly imposing policy of the Caro Community Hospital in refusing to admit Mary Katherine Stoick.

52. That defendant, Dr. Dante Loo had actual knowledge that the aforementioned acts would be dangerous to the plaintiff's life and well being, and acted in intentional disregard of said dangers. Further, he knew she was having a stroke and her life and well being were in danger and intentionally with knowledge of the conditions, and in disregard of the knowledge, refused to admit her to Caro Community Hospital, failed to administer any emergency care to plaintiff, and failed to notify her family physician that she was having a stroke and that he had sent her to her office for immediate attention.

54. That the defendant, Caro Community Hospital is liable for the aforementioned acts of negligence on the part of Dr. Dante Loo for the reason that he at all times and pertinent hereto and relative to all facts stated herein was an employee and/or agent of said defendant as aforestated.

In response, defendant did not argue that the facts pled by plaintiffs were not sufficient to establish bad faith. Dr. Loo asserted only that, since he swore that he did not diagnose plaintiff as having a stroke, he could not have believed there was an emergency, and, hence, there was no bad faith on his part. Applying the "deliberate indifference" test enunciated in *Tobias* to the factual allegations of plaintiffs' complaint, we believe plaintiffs did plead sufficient facts constituting bad faith on the part of Dr. Loo. Therefore, the trial court erred in ruling that plaintiffs did not sufficiently plead bad faith.

The *Ross* Court defined discretionary acts as

"those which require personal deliberation, decision, and judgment." Ministerial acts were defined as "those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." *Ross, supra* at 634-635. The primary distinction between discretionary and ministerial acts is that the former involve significant decision-making, while the latter involve the execution of a decision. *Id.* at 635. The Court declared that the goal was "to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner," but that the immunity extended to individuals was far less than that of governmental agencies. *Id.* at 635.

In the instant case, plaintiffs alleged: (1) that Dr. Loo examined plaintiff and told her she was having a stroke; (2) that Dr. Loo told plaintiff she needed to be admitted to the hospital; (3) that Dr. Loo refused to admit plaintiff to the hospital; and (4) that Dr. Loo failed to properly treat plaintiff for her stroke.

In *Tobias, supra,* the plaintiff alleged that the doctors breached the applicable standard of care in the following ways:

"(a) Weaning Plaintiff's decedent off her asthma medication without providing any substitute therapy to relieve the aggravated symptoms of that condition;

"(b) Failing to properly monitor Plaintiff's decedent's condition while she was being weaned from her asthma medication;

"(c) Failing to properly instruct the staff members of THE YPSILANTI FORENSIC CENTER concerning Plaintiff's decedent's condition." [*Tobias, supra* at 277.]

The trial court in *Tobias* held that the plaintiff failed to plead facts in avoidance of governmental immunity. *Id.* at 275. This Court disagreed, stating:

> Turning to the present case, we believe that the acts complained of include both medical decisions, which are discretionary in nature, and "execution" of those decisions, which is a ministerial act. *Ross, supra.* The decisions whether to wean decedent from the medication and whether or how often to monitor her condition during the weaning process involved medical judgments. These are discretionary determinations. However, if defendants in fact decided that monitoring was necessary to guard against deterioration of the decedent's condition, negligent execution of that decision would fall outside the scope of their individual immunity. Thus, a complete failure to monitor her condition might subject defendants to liability, if defendants had decided that monitoring was necessary. In addition, if defendants decided that monitoring was necessary, a failure to inform or properly inform the staff of the decedent's condition was a ministerial act. We draw this conclusion based on a fair inference that defendants would not be in a position to personally monitor the decedent at all times. If defendants decided that the decedent's condition bore close observation, informing the staff of her condition involved the "execution" of that decision. *Ross, supra.* [*Tobias, supra* at 281.]

Thus, the doctors in *Tobias* were held to be immune from claims arising from their initial decisions on weaning and monitoring the patient; however, they were held not to be immune from claims arising from their actual execution of the weaning and monitoring process, which was a ministerial act.

Applying the *Tobias* analysis to the instant case, we believe plaintiffs sufficiently alleged that Dr.

Loo negligently performed a ministerial-operational act. Accepting the truth of plaintiffs' allegations, Dr. Loo made the decision that plaintiff needed to be admitted to the hospital. Having made this decision, Dr. Loo's execution of that decision, i.e., his failure to admit or otherwise treat plaintiff, is a ministerial act for which governmental immunity does not apply and which may be found by a jury to be negligence.

Dr. Loo contends not only that his decision whether to admit plaintiff to the hospital was discretionary-decisional, but also that, even assuming that he made the decision that plaintiff needed admission, the ministerial-operational acts following it were nontortious. Defendant bases this assertion on the fact that he submitted an affidavit in which he averred that he did not diagnose plaintiff as having a stroke and his claim that this Court must accept his sworn statement as true. However, defendant's argument is without merit because the facts are contested and the reviewing court must look at the facts as pled by plaintiffs, not defendant, in determining whether plaintiffs have pled sufficient facts in avoidance of governmental immunity. Even though defendant submitted an affidavit in which he swore that he did not diagnose plaintiff as having a stroke, this affidavit was clearly contradicted by plaintiff. Therefore, defendant's version of the facts cannot be presumed true as a matter of law. The court's holding that defendant's decision not to admit plaintiff was a purely discretional act was erroneous.

Plaintiffs also claim that in paragraphs 51 and 52 they have sufficiently pled that Dr. Loo committed intentional torts which are an exception to governmental immunity. Recently, in *Smith v Dep't of Public Health,* 428 Mich 540; 410 NW2d 749 (1987), the Court held that an intentional tort

is not per se an exception to governmental immunity. *Id.* at 603, 611. The Court stated that, if the intentional tort is committed within the scope of a governmental function, the tort is subject to governmental immunity. *Id.* at 611. Therefore, a court must look at the activity engaged in at the time of the alleged intentional tort. If the activity was a governmental function, the intentional tort is subject to governmental immunity; if the activity was not a governmental function, the tort is not subject to governmental immunity.

In the instant case, plaintiffs alleged in paragraphs 51 and 52 various omissions which plaintiffs claim are intentional breaches of the standard of care. These allegations alone are not enough to avoid governmental immunity, as plaintiffs at no time alleged that Dr. Loo was not performing a governmental function when he diagnosed plaintiff in his capacity as an employee of the hospital. Therefore, the fact that plaintiffs pled intentional conduct in paragraphs 51 and 52 does not mandate reversal.

However, since we have determined that plaintiffs sufficiently pled that Dr. Loo acted in bad faith in the performance of ministerial acts, the order of summary disposition is reversed.

Reversed.